725 S.E.2d 693

Evelyn GRIER, as the appointed Personal Representative of the Estate of Willie James Fee, deceased, Appellant,

v.

AMISUB OF SOUTH CAROLINA, INC., d/b/a Piedmont Medical Center, Respondent.

No. 27118.

Supreme Court of South Carolina.

Heard March 6, 2012.

Decided May 2, 2012.

John Gressette Felder, Jr., McGowan Hood & Felder, LLC, of Columbia, William Angus McKinnon, McGowan Hood & Felder, LLC, of Rock Hill, for Appellant.

William U. Gunn and Joshua T. Thompson, of Holcombe Bomar, P.A., of Spartanburg, for Respondent.

Justice HEARN.

Willie James Fee died while in the care of AMISUB of South Carolina, Inc., d/b/a Piedmont Medical Center (Piedmont). Evelyn Grier, as the personal representative of his estate, subsequently brought this medical malpractice claim against Piedmont. The circuit court dismissed Grier's claim on the ground that the expert witness affidavit she was required to submit pursuant to Sections 15–36–100 and 15–79–125 of the South Carolina Code (Supp.2011) did not contain a competent opinion on proximate cause. Grier appeals, arguing the court erred in finding these statutes require the affidavit contain such an opinion. We agree and therefore reverse and remand for further proceedings.

## FACTUAL/PROCEDURAL BACKGROUND

Fee was admitted to Piedmont in January 2008 for treatment of a host of ailments, the list of which is not pertinent to this appeal. He remained at Piedmont until September 2008, at which point he was discharged to another facility for further care. However, he was readmitted to Piedmont twelve days later, and he remained there until his death in February 2009.

Prior to bringing wrongful death and survival proceedings against Piedmont stemming from medical malpractice allegedly committed while it was treating Fee, Grier filed a notice of intent to file suit as required by section 15–79–125(A). Her claims contend Piedmont's failure to monitor and treat Fee for bedsores and sepsis contributed to his death. In conjunction with this notice, Grier also filed an affidavit from Sharon Barber, a nurse with experience treating bedsores and their complications. In it, Nurse Barber opined, based on her review of Fee's medical records, that Piedmont breached its

duty of care towards Fee in multiple respects and these breaches were a contributing cause of Fee's death.

Piedmont subsequently filed a motion to dismiss on the ground that Nurse Barber was not qualified to render an opinion as to cause of death, which meant Grier's affidavit did not contain a competent causation opinion. The circuit court agreed that Nurse Barber was not qualified to opine as to cause of death. Additionally, the court held

> that it is implicit in the Tort Reform Act, and in particular the Notice of Intent, Short and Plain Statement of Facts, and the affidavit requirements at issue in this motion, that a showing of proximate cause must be made by submission of a proper affidavit addressing proximate cause, and made by a person qualified to do so. Plaintiff in this instance has failed to submit such an affidavit, and for that reason Defendant's Motion must be granted. . . .

While the court gave Grier thirty days to submit a qualifying affidavit, Grier failed to do so. The court accordingly dismissed Grier's claim. This appeal followed.

## LAW/ANALYSIS

On appeal, Grier concedes Nurse Barber is not qualified to render an opinion as to Fee's cause of death. Thus, the only argument Grier presents is that the circuit court erred in holding the pre-suit affidavit a plaintiff statutorily is required to file before bringing a medical malpractice claim must contain an expert opinion on proximate cause. We agree.

The issue before us is purely one of statutory interpretation. "Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below." *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011). It is well-established that "[t]he cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." *Id.* (quotation omitted). Thus, we must follow the plain and unambiguous language in a statute and

have "no right to impose another meaning." *Id.* It is only when applying the words literally leads to a result so patently absurd that the General Assembly could not have intended it that we look beyond the statute's plain language. *Cabiness v. Town of James Island,* 393 S.C. 176, 192, 712 S.E.2d 416, 425 (2011).

█ In ascertaining the meaning of language used in a statute, we presume the General Assembly is "aware of the common law, and where a statute uses a term that has a well-recognized meaning in the law, the presumption is that the General Assembly intended to use the term in that sense." *State v. Bridgers,* 329 S.C. 11, 14, 495 S.E.2d 196, 198 (1997); *see also Beck v. Prupis,* 529 U.S. 494, 500–01, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000) ("[W]hen Congress uses language with a settled meaning at common law, Congress 'presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.'" (quoting *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952))).

██ Finally, statutes in derogation of the common law are to be strictly construed. *Epstein v. Coastal Timber Co.,* 393 S.C. 276, 285, 711 S.E.2d 912, 917 (2011). Under this rule, a statute restricting the common law will "not be extended beyond the clear intent of the legislature." *Crosby v. Glasscock Trucking Co.,* 340 S.C. 626, 628, 532 S.E.2d 856, 857 (2000). Statutes subject to this rule include those which "limit a claimant's right to bring suit." 82 C.J.S. *Statutes* § 535.

█ With these principles in mind, we turn to the statutes at issue in this case. Section 15–79–125(A) provides, "Prior to filing or initiating a civil action alleging injury or death as a result of medical malpractice, the plaintiff shall contemporaneously file a Notice of Intent to File Suit and an affidavit of an expert witness, subject to the affidavit requirements established in Section 15–36–100." The statute then gives specific guidance as to the requirements for the notice document:

The notice must name all adverse parties as defendants, must contain a short and plain statement of the facts showing that the party filing the notice is entitled to relief, must be signed by the plaintiff or by his attorney, and must include any standard interrogatories or similar disclosures required by the South Carolina Rules of Civil Procedure. *Id.* However, it provides no specifics for the expert affidavit. For that, the statute directs the reader to section 15–36–100. This section in turn states the plaintiff has to submit "an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit." *Id.* § 15–36–100(B).

We begin by examining the statute concerning the affidavit itself, section 15–36–100(B). No party disputes that this statute is unambiguous, and thus we must apply its plain language. In our opinion, the language that the affidavit must "specify at least one negligent act or omission" encompasses only the breach element of a common law negligence claim and not causation. Thus, the statute limits its requirement for the affidavit to only breach.

 First, the term "negligent act or omission" consistently has been used to refer *only* to breach and never to causation. *Thomasko v. Poole*, 349 S.C. 7, 11, 561 S.E.2d 597, 599 (2002) ("A plaintiff, to establish a cause of action for negligence, must prove the following four elements: (1) a duty of care owed by defendant to plaintiff; (2) *breach of that duty by a negligent act or omission;* (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." (emphasis added)); *Doe ex rel. Doe v. Batson*, 345 S.C. 316, 322, 548 S.E.2d 854, 857 (2001) ("To state a cause of action for negligence, the plaintiff must allege facts which demonstrate the concurrence of three elements: (1) a duty of care owed by the defendant; (2) *a breach of that duty by negligent act or omission;* and (3) damage proximately caused by the breach." (emphasis added)); *Bloom v. Ravoira*, 339 S.C. 417, 422, 529 S.E.2d 710, 712 (2000) ("To establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) *breach of that duty by a negligent act or omission;* and (3)

damage proximately resulting from the breach of duty." (emphasis added)); *Bishop v. S.C. Dep't of Mental Health,* 331 S.C. 79, 88, 502 S.E.2d 78, 82 (1998) ("To establish a cause of action in negligence, three essential elements must be proven: (1) duty of care owed by defendant to plaintiff; (2) *breach of that duty by a negligent act or omission;* and (3) damage proximately resulting from the breach of duty." (emphasis added)). Furthermore, proximate cause requires proof beyond just the act or omission in question and concerns whether it is the "but for" cause of the plaintiff's injuries and whether the harm was foreseeable. *Bishop,* 331 S.C. at 88–89, 502 S.E.2d at 83.

The General Assembly therefore used a term of art which has a well-defined common law meaning as just breach, and we can find nothing indicating the General Assembly intended to vary from it. Accordingly, the plain and unambiguous language of the statute forecloses any argument that the affidavit contain a proximate cause opinion.

Moreover, section 15–36–100 restricts a plaintiff's common law right to bring a malpractice claim by imposing this requirement. Consequently, the language in the statute is to be strictly construed, and section 15–36–100 cannot extend any further than what the General Assembly clearly intended. Once again, this statute plainly and unambiguously uses a term of art which at common law refers only to the breach element of a negligence claim. The plain language of a statute being the best evidence of the General Assembly's intent, there is no clear indication it sought to go any further. Thus, we are in no position to go further ourselves.

We therefore hold under these well-established principles that section 15–36–100(B) requires that the expert render an opinion only as to a breach of the standard of care. In its brief, Piedmont appears to concede as much by pointing out that it "has never made the argument that the 'plain language' of Section 15–36–100(B) requires an expert affidavit to opine on proximate cause. Instead, [Piedmont] focus upon Section 15–79–125(A) which requires a plaintiff alleging medical malpractice show a claim upon which a plaintiff is entitled to relief." [1] Under this guise, Piedmont advances two arguments

---

1. At oral argument, Piedmont changed its tune and relied instead on section 15–36–100(B). In particular, Piedmont argued for the first time

regarding this statute: (1) the plain language of section 15–79–125(A) requires the affidavit contain an opinion as to proximate cause because it requires that a plaintiff show he is entitled to relief, and in the alternative, (2) section 15–79–125(A) implicitly imposes this requirement. We disagree with both.

Like section 15–36–100(B), section 15–79–125(A) is unambiguous and in derogation of the common law. Read plainly and strictly, section 15–79–125(A) simply requires the contemporaneous filing of both the notice and the affidavit. While this statute supplies several requirements for the notice, it does not speak at all to what is required for the affidavit beyond stating that it is "subject to the affidavit requirements established in Section 15–36–100." S.C.Code Ann. § 15–79–125(A). While Piedmont argues that the affidavit must contain the same information as the notice—i.e., a demonstration that the plaintiff is entitled to relief, which would include causation—its construction is refuted by the plain language of section 15–79–125(A). By its very terms, this statute imposes no content requirements for the expert affidavit and specifically delegates that task to section 15–36–100.

We also reject Piedmont's "implicit legislative intent" argument. For this, Piedmont turns to the policies behind tort reform legislation such as section 15–79–125. It correctly notes that one of the major goals behind these requirements is to curtail frivolous litigation by ensuring plaintiffs only present colorable claims. Moreover, section 15–79–125(C) requires that parties to a medical malpractice claim engage in mandatory pre-suit mediation. It is only if this mediation fails that a civil action officially is initiated in the circuit court. S.C.Code Ann. § 15–79–125(E). Thus, Piedmont argues having a fuller picture of a plaintiff's claim prior to mediation, including the basis for proximate cause, enables a more productive media-

---

that the language requiring the affidavit set forth "the factual basis for each claim" imposes a requirement for a causation opinion. The essence of the argument is that if the plaintiff must show a factual basis for the "claim," that necessarily includes the element of causation. Not only was this the first time it made this argument, the argument is unavailing. The "factual basis" language clearly refers back to the "negligent act or omission" requirement, and therefore it only requires the affiant supply a factual basis for his opinion regarding breach.

tion process which can avoid the need for a protracted battle in court.

We do not doubt that requiring the affidavit to contain an opinion regarding causation furthers these important goals. Nevertheless, the statute is unambiguous and we are confined to what the statute says, not what it ought to say, for we have no right to modify a statute's application "under the guise of judicial interpretation." *See Coker v. Nationwide Ins. Co.*, 251 S.C. 175, 182, 161 S.E.2d 175, 178 (1968). In other words, when a statute is clear on its face, it is "improvident to judicially engraft extra requirements to legislation" just because doing so may further the intent behind the statute. *See Berkebile v. Outen*, 311 S.C. 50, 55–56, 426 S.E.2d 760, 763 (1993). We must also be mindful that section 15–79–125(A) is to be strictly construed, and imposing requirements which are not clearly intended to be in it violates this rule. We do not believe it is clear the General Assembly intended to include this requirement, and there are many reasons why it could have chosen not to do so. Moreover, Piedmont has not shown how an application of the plain language would lead to a result so patently absurd it could not have been intended by the General Assembly. We therefore are in no position to look beyond the plain language of the statute and read into it a requirement that the expert also opine as to causation at this stage in the proceedings.

Accordingly, we hold nothing in section 15–79–125(A) requires that an expert affidavit in a medical malpractice action submitted pursuant to section 15–36–100(B) contain an opinion regarding causation.

## CONCLUSION

In conclusion, we reverse the circuit court and hold the expert affidavit required by sections 15–36–100 and 15–79–125 does not need to contain an opinion as to proximate cause.[2]

---

2. Piedmont made a general request for us to affirm under Rule 220(c), SCACR, but did not identify any specific grounds appearing in the record on which we could do so. It has therefore abandoned any additional sustaining grounds. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("Of course, a respondent may abandon an additional sustaining ground ... by failing to

We therefore remand this matter for further proceedings. Our holding today in no way limits a plaintiff's burden to come forward with expert testimony to support the merits of his claims, if necessary, later in the process. Instead, we merely hold that sections 15–36–100 and 15–79–125 do not require an expert opinion as to causation to be contained within the pre-filing affidavit.

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.

---

raise it in the appellate brief."); *see also State v. Jones,* 344 S.C. 48, 58, 543 S.E.2d 541, 546 (2001) (finding a conclusory argument abandoned).