KONDUROS, J.:
*23 In this appeal from a declaratory judgment action, the City of Fountain Inn (Fountain Inn) appeals the circuit court's determination Fountain Inn may not provide natural gas service in a particular area without the consent of the Commissioners of Public Works of the City of Laurens, South Carolina, also known as Laurens Commission of Public Works, (LCPW) because that area was within LCPW's "designated service area." We affirm.
FACTS/PROCEDURAL HISTORY
LCPW is the entity established by the City of Laurens to provide combined utility services, including natural gas, to residential, commercial, and industrial customers. Fountain
Inn also provides natural gas services. Both parties sell natural gas to customers inside their respective corporate limits as well as to customers outside those limits as allowed by section 5-7-60 of the South Carolina Code (2004).[1]
During October 1992, officials from both municipalities met to discuss establishing a boundary line in an unincorporated area between the two cities to prevent multiple gas lines in an area. On November 11, 1992, LCPW General Manager Coleman Smoak Jr. sent a letter to Fountain Inn's natural gas System Manager, Carey Elliott, and enclosed a map (the Map) detailing the proposed territorial boundary between the two gas systems. Elliott replied on November 17, 1992, expressing agreement regarding the accuracy of the Map, stating the Map was "in agreement with the Fountain Inn City Council." On November 25, 1992, Smoak responded, indicating a resolution was being prepared for adoption by both municipalities' governing bodies.
However, the boundary line included in the Map was not formally ratified by either the Fountain Inn City Council or by LCPW. For the most part, both parties observed the boundary line for almost two decades, although one of the parties occasionally exceeded the boundary line with the permission of the other party. Nevertheless, some disagreements occurred in which Fountain Inn accused LCPW of serving customers in its territory.[2]
In 2011, LCPW was contacted about providing natural gas service to an industrial customer, ZF Transmissions, the first company to build in a newly constructed area named Owings Industrial Park. Owings Industrial Park is located entirely within LCPW's portion of the boundary line on the Map. The economic development director for Laurens County Development Corporation later informed LCPW that Fountain Inn had also submitted a proposal on the same project. LCPW,
Fountain Inn, and Clinton Newberry Natural Gas Authority[3] met to discuss the territory issue but were unable to reach a resolution of the matter.[4] Ultimately, ZF Transmissions accepted LCPW's bid, and they signed a contract.
On March 30, 2011, LCPW filed a complaint seeking a declaratory judgment that Fountain Inn could not provide natural gas in LCPW's service area pursuant to section 5-7-60.[5] It also sought an injunction to prohibit *24 Fountain Inn from providing natural gas services in LCPW's service area. On November 14, 2011, the circuit court denied the injunction, finding it did not appear LCPW would suffer any damage prior to trial because LCPW did not allege "there were any other substantial customers in the disputed area who would require natural gas service in the near future."[6] Subsequently, both parties filed motions for summary judgment. The circuit court denied both motions and found genuine issues of material fact needed to be decided at trial.
The circuit court conducted a bench trial on March 20, 2014. On cross-examination, Thomas Pitman, the gas manager for Fountain Inn, testified Fountain Inn had to run a new line to provide gas service in Owings Industrial Park because it did not previously have a line there. On redirect, Pitman indicated LCPW also had to build a line to connect to ZF Transmissions' facility. In rebuttal, Dale Satterfield, the former general manager of LCPW, indicated an existing line was already in place when LCPW procured a contract with ZF. He stated LCPW only had to tap into its existing line like it does with any new customer. He also testified that unlike LCPW, Fountain Inn had to run a main line to service the Owings
Industrial Park because it did not have one in place at the time.
On September 26, 2014, the circuit court issued an order finding pursuant to section 5-7-60, LCPW had established a designated service area on the southeastern side of the boundary line shown on the Map and thus Fountain Inn may not provide natural gas service in that area without LCPW's permission. The court reasoned the undisputed testimony demonstrated LCPW had "furnished natural gas service in [the contested] area for over two decades" and also had "the infrastructure to provide that service on an ongoing basis." The court also noted LCPW passed a resolution certifying LCPW provides natural gas service to the contested area and it budgeted to do so in accordance with section 5-7-60. Fountain Inn filed a motion to amend, which the circuit court denied. This appeal followed.
STANDARD OF REVIEW
The parties disagree on the proper standard of review for this case. "Declaratory judgment actions are neither legal nor equitable and[ ] therefore, the standard of review depends on the nature of the underlying issues." Judy v. Martin , 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009). "To determine whether an action is legal or equitable, this [c]ourt must look to the action's main purpose as reflected by the nature of the pleadings, evidence, and character of the relief sought." Lollis v. Dutton , 421 S.C. 467, 478, 807 S.E.2d 723, 728 (Ct. App. 2017) (quoting Fesmire v. Digh , 385 S.C. 296, 303, 683 S.E.2d 803, 807 (Ct. App. 2009) ). "The character of the action is generally ascertained from the body of the complaint, but when necessary, resort may also be had to the prayer for relief and any other facts and circumstances which throw light upon the main purpose of the action." Sloan v. Greenville Cty. , 380 S.C. 528, 534, 670 S.E.2d 663, 666-67 (Ct. App. 2009). "If the character of the action appears with sufficient clearness in the body of the complaint, it must control, unaffected by the prayer for relief or the intention or characterization of the pleader." Bramlett v. Young , 229 S.C. 519, 531, 93 S.E.2d 873, 879 (1956) (quoting Speizman v. Guill , 202 S.C. 498, 514-15, 25 S.E.2d 731, 739 (1943) ). "While the prayer constitutes no part of the plaintiff's cause of action, 'it is an element that may properly be considered in determining the legal or equitable character of an action, and[ ] whe[n] the complaint states facts which would support either a legal or an equitable action, the relief demanded will ordinarily determine its character.' " Id. (citation omitted) (quoting 1 C.J.S. Actions § 54 at 1155).
Fountain Inn asserts the proper standard of review to apply is that for the review of a request for an injunction. "The power of the court to grant an injunction is in equity."
*25 Strategic Res. Co. v. BCS Life Ins. Co. , 367 S.C. 540, 544, 627 S.E.2d 687, 689 (2006). An injunction is a drastic and "extraordinary equitable remedy courts may use in their discretion in order to prevent irreparable harm to a party" when no adequate remedy exists at law. Hampton v. Haley , 403 S.C. 395, 409, 743 S.E.2d 258, 265 (2013). "In an action at equity, tried by a judge alone, an appellate court may find facts in accordance with its own view of the preponderance of the evidence." Inlet Harbour v. S.C. Dep't of Parks, Recreation & Tourism , 377 S.C. 86, 91, 659 S.E.2d 151, 154 (2008). "However, we are not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility." Straight v. Goss , 383 S.C. 180, 192, 678 S.E.2d 443, 449 (Ct. App. 2009). "Moreover, the appellant is not relieved of his burden of convincing the appellate court the trial judge committed error in his findings." Pinckney v. Warren , 344 S.C. 382, 387-88, 544 S.E.2d 620, 623 (2001).
However, LCPW contends the standard of review is that interpreting a statute and thus is at law. "Statutory interpretation is a question of law ...." Barton v. S.C. Dep't of Prob. Parole & Pardon Servs ., 404 S.C. 395, 414, 745 S.E.2d 110, 120 (2013). Additionally, "[t]he determination of legislative intent is a matter of law." Wehle v. S.C. Ret. Sys. , 363 S.C. 394, 402, 611 S.E.2d 240, 244 (2005). "This [c]ourt reviews all questions of law de novo." Lollis , 421 S.C. at 477, 807 S.E.2d at 728 (quoting Fesmire , 385 S.C. at 302, 683 S.E.2d at 807 ). "In an action at law tried without a jury, an appellate court's scope of review extends merely to the correction of errors of law." Temple v. Tec-Fab, Inc ., 381 S.C. 597, 599-600, 675 S.E.2d 414, 415 (2009). "The [c]ourt will not disturb the trial court's findings unless they are found to be without evidence that reasonably supports those findings." Id. at 600, 675 S.E.2d at 415.
Because the resolution of this matter turns on the interpretation of section 5-7-60, the appropriate standard of review for this case is that for the interpretation of a statute, which is an action at law.
LAW/ANALYSIS
Fountain Inn maintains the circuit court erred by finding LCPW could exclude Fountain Inn from providing natural gas service to customers located outside the boundaries of either city pursuant to section 5-7-60 of the South Carolina Code. It asserts a municipality is limited in its ability to serve outside of its municipal limits and LCPW has not established a designated service area. It further contends the cases relied on by the circuit court for establishing a designated service area are distinguishable. We disagree.[7]
"Our constitution mandates 'home rule' for local governments." Quality Towing, Inc. v. City of Myrtle Beach , 340 S.C. 29, 37, 530 S.E.2d 369, 373 (2000) (citing S.C. Const. art. VIII). "Implicit in Article VIII is the realization that different local governments have different problems that require different solutions." Id. (quoting Hosp. Ass'n of S.C., Inc. v. Cty. of Charleston , 320 S.C. 219, 230, 464 S.E.2d 113, 120 (1995) ). Article VIII and the South Carolina Code
bestow upon municipalities the authority to enact regulations for government services deemed necessary and proper for the security, general welfare and convenience of the municipality or for preserving health, peace, order and good government, obviating the requirement for further specific statutory authorization so long as such regulations are not inconsistent with the Constitution and general law of the state.
Williams v. Town of Hilton Head Island, S.C. , 311 S.C. 417, 422, 429 S.E.2d 802, 805 (1993).
"The Home Rule Act of 1975 completely rewrote the powers of municipalities in this [s]tate. [Section] 5-7-60 [of the South Carolina Code] contains provisions both granting and delimiting the exercise of corporate functions of municipalities outside their corporate limits."
*26 City of Newberry v. Pub. Serv. Comm'n of S.C. , 287 S.C. 404, 406, 339 S.E.2d 124, 126 (1986). Section 5-7-60 provides:
Any municipality may perform any of its functions, furnish any of its services, ... and make charges therefor and may participate in the financing thereof in areas outside the corporate limits of such municipality by contract with any individual, corporation, state or political subdivision or agency thereof or with the United States Government or any agency thereof, subject always to the general law and Constitution of this State regarding such matters, except within a designated service area for all such services of another municipality or political subdivision, including water and sewer authorities, and in the case of electric service, except within a service area assigned by the Public Service Commission ... or areas in which the South Carolina Public Service Authority may provide electric service pursuant to statute. For the purposes of this section[,] designated service area shall mean an area in which the particular service is being provided or is budgeted or funds have been applied for as certified by the governing body thereof. Provided , however, the limitation as to service areas of other municipalities or political subdivisions shall not apply when permission for such municipal operations is approved by the governing body of the other municipality or political subdivision concerned.
S.C. Code Ann. § 5-7-60 (2004).[8]
" Section 5-7-60 provides in part that any municipality may provide its services outside its corporate limits by contract, and the statute defines a designated 'service area' to mean the area in which a particular service is being provided." Mathis v. Hair , 358 S.C. 48, 53, 594 S.E.2d 851, 854 (Ct. App. 2003) ; see also City of Darlington v. Kilgo , 302 S.C. 40, 43, 393 S.E.2d 376, 378 (1990) (finding when a city had provided limited fire protection to an area outside its boundaries pursuant to a contract, the city had established a service area and thus the area could not be included in the county fire district plan without prior agreement with the city).
In defining designated service area, the statute uses the term "area" without providing a definition of it. See § 5-7-60. "Whe[n] a word is not defined in a statute, our appellate courts have looked to the usual dictionary meaning to supply its meaning." Berkeley Cty. Sch. Dist. v. S.C. Dep't of Revenue , 383 S.C. 334, 345, 679 S.E.2d 913, 919 (2009) (quoting Lee v. Thermal Eng'g Corp. , 352 S.C. 81, 91-92, 572 S.E.2d 298, 303 (Ct. App. 2002) ); see also Centex Int'l, Inc. v. S.C. Dep't of Revenue , 406 S.C. 132, 144, 750 S.E.2d 65, 71 (2013) (relying on Black's Law Dictionary and Merriam-Webster's Collegiate Dictionary to provide the meaning of a word not defined in the statute); S.C. Pub. Interest Found. v. Courson , 420 S.C. 120, 124, 801 S.E.2d 185, 187 (Ct. App. 2017) (finding when a word is not defined by statute, "the court must look to the usual and customary meaning ... to ascertain the legislature's intent"), cert. denied , S.C. Sup. Ct. Order dated Feb. 1, 2018. Black's Law Dictionary has defined area as "[a] surface, a territory, a region." Area , Black's Law Dictionary (6th ed. 1990). Webster's New World College Dictionary defines area as "a part of the earth's surface; region; tract." Area , Webster's New World College Dictionary (4th ed. 2008).
Our supreme court determined in Spartanburg Sanitary Sewer District v. City of Spartanburg , 283 S.C. 67, 72, 321 S.E.2d 258, 261 (1984), the sewer district had established a designated service area when it had "constructed sanitary sewer collection lines, transmission lines and treatment facilities to handle the waste water generated by the users of the sewerage system located within the district."
"Questions of statutory interpretation are questions of law, which this [c]ourt is free to decide without any deference to the tribunal below."
*27 Duke Energy Corp. v. S.C. Dep't of Revenue , 415 S.C. 351, 355, 782 S.E.2d 590, 592 (2016). "The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." Centex Int'l, Inc. , 406 S.C. at 139, 750 S.E.2d at 69 (quoting Sloan v. Hardee , 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007) ). "A statutory provision should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute." Lockwood Greene Eng'rs, Inc. v. S.C. Tax Comm'n , 293 S.C. 447, 449, 361 S.E.2d 346, 347 (Ct. App. 1987). "[W]e must follow the plain and unambiguous language in a statute and have 'no right to impose another meaning.' " Grier v. AMISUB of S.C., Inc. , 397 S.C. 532, 535-36, 725 S.E.2d 693, 695 (2012) (quoting Hodges v. Rainey , 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ).
"[W]ords in a statute must be construed in context," and "the meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute." S. Mut. Church Ins. Co. v. S.C. Windstorm & Hail Underwriting Ass'n , 306 S.C. 339, 342, 412 S.E.2d 377, 379 (1991). "The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose." Hitachi Data Sys. Corp. v. Leatherman , 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992).
Eagle Container Co. v. Cty. of Newberry , 379 S.C. 564, 570-71, 666 S.E.2d 892, 895-96 (2008) (alteration by court). "[T]he statute must be read as a whole and sections which are part of the same general statutory law must be construed together and each one given effect." CFRE, LLC v. Greenville Cty. Assessor , 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (quoting S.C. State Ports Auth. v. Jasper Cty. , 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006) ).
In the present case, the circuit court did not err in its determination that Fountain Inn could not operate in LCPW's designated service area. Because the statute is unambiguous, we must follow its plain language. See Grier , 397 S.C. at 535-36, 725 S.E.2d at 695 ("[W]e must follow the plain and unambiguous language in a statute and have 'no right to impose another meaning.' " (quoting Hodges , 341 S.C. at 85, 533 S.E.2d at 581 ) ). We agree with the circuit court the phrase in section 5-7-60"as certified by the governing body" only applies to the portion of the sentence stating "funds have been applied for" and not the prior part of the sentence stating "an area in which the particular service is being provided." The record contains evidence the two parties generally observed the boundary provided by the Map. Because LCPW has been providing natural gas in the area, it has established a designated service area. Accordingly, the circuit court did not err in finding LCPW had a designated service area in which Fountain Inn could not offer its services without LCPW's permission.[9]
CONCLUSION
The circuit court's decision LCPW has a designated service area and Fountain Inn cannot provide gas service within that designated service area without LCPW's permission is
AFFIRMED.
SHORT and GEATHERS, JJ., concur.

"Section 5-7-60 provides in part that any municipality may provide its services outside its corporate limits by contract, and the statute defines a designated 'service area' to mean the area in which a particular service is being provided." Mathis v. Hair , 358 S.C. 48, 53, 594 S.E.2d 851, 854 (Ct. App. 2003).

At the time the boundary line was initially discussed, both parties already had a few customers on the opposite sides of the line.

Clinton Newberry Natural Gas Authority is another natural gas provider not a party to this case.

The Public Service Commission regulates some other competing providers of natural gas services because those are not owned by municipalities or other governments.

In addition to its action under section 5-7-60, LCPW initially sought relief under breach of contract and promissory estoppel theories, but it abandoned those causes of action and only sought relief at trial under section 5-7-60.

Currently, Fountain Inn provides natural gas to Uniscite, the second company established in Owings Industrial Park.

We disagree with LCPW's assertion that Fountain Inn failed to appeal the circuit court's ruling that providing service in an area was enough to establish a designated service area and thus that ruling is the law of the case. Fountain Inn's appeal encompasses this ruling. Therefore, this ruling is not the law of the case and does not bar the appeal.

Many South Carolina cases discussing home rule involve electric services, thus implicating the Public Service Commission, which is not involved in natural gas service. See, e.g. , City of Rock Hill v. Pub. Serv. Comm'n of S.C. , 308 S.C. 175, 177-79, 417 S.E.2d 562, 563-64 (1992) ; Blue Ridge Elec. Co-op, Inc. v. City of Seneca , 297 S.C. 283, 286-90, 376 S.E.2d 514, 516-18 (1989) ; City of Newberry , 287 S.C. at 406-07, 339 S.E.2d at 125-26.

Fountain Inn also contends the circuit court erred in ruling the Map created a boundary line because the parties could not have entered into such an agreement, much less entered into it in such a way as to bind future councils and customers who are not residents of either Fountain Inn or the City of Laurens. As we affirm because the designated service area was created by the two parties observing the limits over a period of many years, not by the Map creating a binding contract, we do not need to reach this issue. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review the remaining issues when its determination of a prior issue is dispositive of the appeal).