# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Modesta Brinkman, David Brinkman, James Coleman, Carl Foster, Karen Foster, Robert Collins and Pamela Collins, Appellants,

v.

Weston & Sampson Engineers, Inc., City of Columbia, South Carolina, North American Pipeline Management and Layne Inliner, Defendants,

Of Which the City of Columbia, South Carolina, is the Respondent.

Appellate Case No. 2018-000948

———————————

Appeal from Richland County
G. Thomas Cooper, Jr., Circuit Court Judge,
Jocelyn Newman, Circuit Court Judge

———————————

Opinion No. 5870
Heard March 2, 2021 – Filed November 10, 2021

———————————

**AFFIRMED**

———————————

John Adams Hodge and Sharon A. Hodge, both of John Adams Hodge & Associates, LLC, of Columbia; and Geoffrey Kelly Chambers, of Green Cove Springs, Florida; all for Appellants.

William Michael Hemlepp, Jr., and Dana M. Thye, of City Attorney's Office, both of Columbia, for Respondent.

**LOCKEMY, C.J.:**  In this civil action, property owners Modesta and David Brinkman, Carl and Karen Foster, James Coleman, and Robert Collins (collectively, Owners)[1] appeal the circuit court's grant of summary judgment in favor of the City of Columbia (the City) as to Owners' claims under section 16-11-780 of the South Carolina Code (2015).[2]  Owners argue the circuit court erred in (1) finding section 16-11-780 inapplicable, (2) failing to find the City liable because it had actual and constructive knowledge of the existence of historical and archaeological resources on Owners' properties, (3) finding no preservation or conservation authorities had designated the bridge abutments on Owners' properties as archaeological resources or structures, (4) concluding a designation on the National Register of Historic Places was necessary, (5) misstating the statutory requirements of section 16-11-780(C), and (6) finding the City was immune from liability pursuant to the "utility worker exception" of section 16-11-780(K)(3).  We affirm.

## FACTS

Owners each own real property on Castle Road on the banks of the Broad River in Richland County.  The City owns and operates sewer lines that run beneath portions of Owners' properties and possesses a permanent, fifteen-foot-wide easement across the properties for the purpose of maintaining the sewer line.  In the fall of 2014, the City began a sewer rehabilitation project, which required access to the sewer line beneath Owners' properties.

According to Owners, two bridge abutments stood on a portion of their property located outside of the easement.  Owners claimed these abutments, which were made of carved rock, were built in the 1700s and were "the oldest existing structures in the Midlands."

---

[1] The circuit court dismissed Pamela Collins from the case.

[2] *See* § 16-11-780(C) ("It is unlawful for a person to wilfully, knowingly, or maliciously enter upon the lands of another or the posted lands of the State and disturb or excavate a prehistoric or historic site for the purpose of discovering, uncovering, moving, removing, or attempting to remove an archaeological resource"); *see also* § 16-11-780(I) (allowing a private landowner to "bring a civil action for a violation of this section").

The City hired several contractors, including Weston & Sampson Engineers, Inc., North American Pipeline Management (NAPM), and Layne Inliner, to perform various aspects of the rehabilitation work. While the City and the contractors were clearing the land to begin work on the sewer line, they destroyed the stones that allegedly comprised the bridge abutments. Thereafter, the City acquiesced to Owners' request that all work cease. Owners then commenced this action against the contractors and the City, alleging various causes of action, including destruction of archaeological resources in violation of section 16-11-780.[3]

Dr. Johnathan Leader, State Archaeologist of South Carolina, testified in a deposition that David Brinkman contacted him around 2008 to discuss the existence of a historic bridge abutment on his property. Dr. Leader testified he visited the property at Brinkman's request and observed "a bridge abutment with tool marks and other materials commensurate with late 17[00s], early 1800s." Dr. Leader stated he believed "it was a historic abutment from the appropriate time period and it was likely to be the Compty bridge abutment." However, he explained "additional excavation" and review of "other properties across the river" would have been the "next step." In addition, although Brinkman submitted an application in 2008 to the South Carolina Department of Archives and History seeking to add the site to the National Register of Historic Places, the Department stated a great deal more research and archaeological investigation was needed before a positive determination of eligibility could be made. The Department also "question[ed] whether there was a sufficient amount of physical remains from the ferry and bridge site to convey in any tangible way the history of th[e] area."

The record contains a screenshot from the website, "ArchSite." Dr. Leader testified ArchSite was a multi-agency website that allowed access to the archaeological resources database. He explained that when ArchSite received information about historic sites, it would verify the information and post it to the website. The image in the record shows a rendering of part of the Broad River and Castle Road, and it includes the notation "Historic Areas: Broad River Ferry and Bridge Site" and lists the Brinkmans' address.

The City and NAPM filed separate motions for summary judgment. The circuit court granted NAPM's motion as to Owners' claims for violation of section 16-11-780. The circuit court concluded that because the statute required "an intent

---

[3] Owners alleged various other causes of action, which the circuit court stayed pursuant to Rule 205, SCACR. Owners later settled with each of the contractors as to all claims, and the contractors were dismissed from this action.

to enter [the properties] for the sole purpose of disturbing[ or ]destroying a known []archaeological resource," Owners were required to provide "some evidence that NAPM knowingly violated the terms of the statute."  The circuit court likewise granted the City's motion for summary judgment as to Owners' claims for violation of section 16-11-780.  The circuit court found (1) "no governing preservation or conservation authority [had] recognize[d] the alleged archaeological structures as either archaeological resources or historical structures," and (2) subsection 16-11-780(K)(3)[4] exempted the City from liability.  The circuit court incorporated by reference the conclusions of law from the order granting NAPM's motion for summary judgment.  This appeal followed.

## STANDARD OF REVIEW

"When reviewing an order granting summary judgment, the appellate court applies the same standard as the [circuit] court.  Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006) (citation omitted); *see also* Rule 56(c), SCRCP (providing the court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").  "In determining whether summary judgment is appropriate, the evidence and its reasonable inferences must be viewed in the light most favorable to the nonmoving party." *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991).  "The [circuit] court should grant summary judgment against a party who fails to make a showing sufficient to establish the existence of an essential element of the party's case." *Fender & Latham, Inc. v. First Union Nat'l Bank of S.C.*, 316 S.C. 48, 50, 446 S.E.2d 448, 449 (Ct. App. 1994).

"Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below." *Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 535, 725 S.E.2d 693, 695 (2012) (quoting *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011)).

---

[4] (providing that "[n]othing contained in this section shall limit or interfere with . . . (3) the lawful acts of a utility worker acting in the scope of and in the course of his employment").

**LAW AND ANALYSIS**[5]

Section 16-11-780(C) provides,

> It is unlawful for a person to *wilfully, knowingly, or maliciously enter* upon the lands of another or the posted lands of the State and disturb or excavate a prehistoric or historic site *for the purpose of* discovering, uncovering, moving, removing, or attempting to remove an archaeological resource.  Each unlawful entry and act of disturbance or excavation of a prehistoric or historic site constitutes a separate and distinct offense.

(emphases added); *see also* S.C. Code Ann. § 16-11-780(D)-(H) (setting forth criminal penalties for violation of this section).

The statute defines an archaeological resource as:

> [A]ll artifacts, relics, burial objects, or material remains of past human life or activities that are at least one hundred years old and possess either archaeological or commercial value, including pieces of pottery, basketry, bottles, weapons, weapon projectiles, tools, structures or portions of structures, rock paintings, rock carving, intaglios, graves, or human skeletal materials.

§ 16-11-780(A)(1).  The statute authorizes private landowners to bring a civil action for violation of the statute.  *See* § 16-11-780(I) ("The landowner, in the case of private lands . . . may bring a civil action for a violation of this section to recover the greater of the archaeological resource's archaeological value or commercial value, and the cost of restoration and repair of the site where the archaeological resource was located, plus attorney's fees and court costs.").

Owners argue the circuit court erred in concluding section 16-11-780 did not apply to the City's conduct.  Owners contend the circuit court erred by concluding the statute required a person to act with the *sole* purpose of harming an archaeological resource.  They next assert the adverbs "wilfully, knowingly or maliciously"

---

[5] Owners' appellate brief raises six issues on appeal.  Because Issues I-V all pertain to the applicability of section 16-11-780(C), we address these issues together here.

modified only the words "enter upon the lands of another" and the statute did not require knowledge that the site was historic or that it contained an archaeological resource. Owners further argue the statute did not require the City to know that the stones were an archaeological resource but only required that the City act with the purpose of moving the stones. We disagree.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." *Grier*, 397 S.C. at 535, 725 S.E.2d at 695 (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)). "Words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Sloan*, 371 S.C. at 499, 640 S.E.2d at 459.

Viewing the evidence and drawing all reasonable inferences therefrom in the light most favorable to Owners, no evidence showed the City cleared the land "for the purpose of" discovering, uncovering, moving, removing, or attempting to remove an archaeological resource. Pursuant to a plain reading of section 16-11-780(C), a person must disturb a historic site "for the purpose of" moving, removing, or attempting to remove an archaeological resource. § 16-11-780(C). "'Purpose' is the highest level of *mens rea* known in criminal law . . . ." *State v. Jefferies*, 316 S.C. 13, 19, 446 S.E.2d 427, 431 (1994); *see also United States v. Bailey*, 444 U.S. 394, 405 (1980) ("In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent."). "*Purpose* is the result desired by the actor." *Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 172, 383 S.E.2d 2, 7 (Ct. App. 1989); *see also Purpose*, *Black's Law Dictionary* (11th ed. 2019) (defining "purpose" as "[a]n objective, goal, or end"). Thus, to violate the statute, a person must desire the result of moving or removing an archaeological resource. The desire to accomplish such a result necessarily requires knowledge of the existence of an archaeological resource, and the City could not have desired the result of moving or removing an archeological resource without such knowledge. When the incident occurred, the City and its contractors were attempting to clear the easement to provide access to the sewer lines. Regardless of whether the objects were in fact archaeological resources, Owners provided no evidence that the City had any knowledge of the historical nature of the site or that it contained an archaeological resource. Notwithstanding the entry on ArchSite, Owners failed to

show the City was obligated to consult this resource.[6] Additionally, although Owners argue the workers disturbed the abutment despite James Coleman's warnings to two on-site workers, Coleman's testimony was that he shouted to the workers and said there was a valued monument on the property, but he did not specify whether this occurred before or after the workers destroyed the stones. Further, he testified he was not certain the worker operating the bulldozer even heard him.

We can draw only one reasonable inference based on the record: in clearing the property and thus destroying the stones, the City was acting with the sole, legitimate purpose of clearing its easement to allow it to repair the sewer line. Thus, the City's destruction of the alleged archaeological resource, although unfortunate, did not violate the statute because no evidence showed it did so "for the purpose of" destroying an archaeological resource. We therefore conclude there is no genuine issue of material fact as to Owners' claim for violation of the statute and the City was entitled to judgment as a matter of law. *See* Rule 56(C), SCRCP.

Further, we acknowledge the circuit court incorrectly inserted the word "sole" into the statutory language; however, because we find the City's actions did not violate the statute, we reject Owners' contention the circuit court's interpretation requires reversal. *See Grier*, 397 S.C. at 535, 725 S.E.2d at 695 ("Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below." (quoting *CFRE, LLC*, 395 S.C. at 74, 716 S.E.2d at 881)).

Finally, we reject Owners' arguments that the City was liable through actual and constructive knowledge of archaeological resources on Owners' property and that the circuit court erred in determining no preservation or conservation authorities had designated the objects as archaeological resources and in finding designation on the National Register of Historic Places was required. Owners correctly state that the statute does not expressly require an object to be designated on the National Register of Historic Places to constitute an archaeological resource. However, the circuit court made no finding that section 16-11-780(C) required such designation. Further, as we stated, regardless of whether any preservation or conservation authorities designated the objects as archaeological resources,

---

[6] We note the ArchSite entry indicates the site is "not eligible or requires evaluation." Thus, we question whether the ArchSite entry contained sufficient information to conclude the property was historic.

Owners failed to demonstrate the City was or should have been aware of such designation.  Thus, no evidence showed the City had either actual or constructive knowledge of the existence of archaeological resources on the property, and we find no error.

For the foregoing reasons, we conclude Owners failed to show the existence of any genuine issue of material fact and the City was entitled to judgment as a matter of law as to Owners' claims under section 16-11-780(C), and we affirm.[7]

**CONCLUSION**

Based on the foregoing, the circuit court's order granting summary judgment in favor of the City is

**AFFIRMED**.

**HUFF and HEWITT, JJ., concur.**

---

[7] Because our decision on this issue is dispositive, we decline to address Owners' remaining issue of whether the circuit court erred in finding the City was exempt from liability pursuant to subsection 16-11-780(K)(3).  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating it was not necessary to address the appellant's remaining issues in light of the court's disposition of the case).