716 S.E.2d 877

**CFRE, LLC, Appellant,**

v.

**GREENVILLE COUNTY ASSESSOR, Respondent.**

No. 27032.

Supreme Court of South Carolina.

Heard June 21, 2011.

Decided Aug. 29, 2011.

---

68

J. William Ray, of Greenville, for Appellant.

Jeffrey D. Wile, County of Greenville, of Greenville, for Respondent.

Acting Justice MOORE.

CFRE, LLC appeals the decision of the Administrative Law Court (ALC) that real estate owned by the company is not entitled to the residential tax ratio under Section 12–43–220(c) of the South Carolina Code (Supp.2010). Furthermore, CFRE argues the ALC erred in not sanctioning the Greenville County Assessor (Assessor) for failing to respond to discovery requests from CFRE. While we hold the ALC did not abuse its discretion in not sanctioning the Assessor, we reverse the ALC's conclusion regarding CFRE's entitlement to the legal residence tax ratio and remand.

## FACTUAL/PROCEDURAL BACKGROUND

Sherry Ray purchased residential property in Greenville County, South Carolina, in 1991 and has lived there continuously ever since. Because she owned no other residential property, the property was taxed at the four percent legal residence tax ratio.

In 2004, Ray formed CFRE, a single-member limited liability company with herself as the sole member. CFRE conducts no business and was formed solely for estate planning and asset protection purposes. To that end, Ray declined to have CFRE taxed as a corporation and, in 2006, deeded the title in her home to it. Because there was a conveyance by deed of the property, the Assessor automatically commenced a reassessment of the property for the 2007 tax year. Accordingly, the property was subjected to the default property tax ratio of six percent until CFRE could prove entitlement to the lower ratio under section 12–43–220.[1]

When CFRE sought the four percent ratio, the Assessor denied it eligibility. CFRE then requested a personal interview with the Assessor's office, which is the next step in the appeals process. During that interview, Ray met with Debbie Adkins, who is the manager for the group within the Assessor's office responsible for property classifications. Adkins refused to change the ratio back to four percent because she

---

1. This reassessment also resulted in an increase in the property's fair market and taxable market values. CFRE and the Assessor reached a separate agreement with respect to this increase that is not the subject of this appeal.

believed, based primarily on an Attorney General's Opinion from 2003, a limited liability company categorically cannot qualify for it. CFRE then appealed to the Greenville County Board of Assessment Appeals, which affirmed the Assessor's decision.[2] Accordingly, CFRE requested a contested case hearing before the ALC.

Following assignment to the ALC, CFRE filed interrogatories and a request for production on the Assessor. After not receiving a response to either of these, CFRE filed a motion to compel. Apparently in response to CFRE's motion, the ALC ordered the Assessor to produce certain documents pertaining to the case; however, the court did not specifically order the Assessor to respond to the interrogatories or requests for production. Although the Assessor never did respond to CFRE's discovery requests, it fully complied with the court's order, submitting its preliminary tax appeal statement, which set forth a statement of the facts and legal authority it planned to use, and a filing titled "Exchange of Evidence and Foundation for Documents." Furthermore, the Assessor twice supplemented these filings.

Just days before the hearing, CFRE moved to prevent the Assessor from presenting any evidence or argument due to its failure to respond to the discovery requests. The Assessor steadfastly maintained that it had provided CFRE all the information in the Assessor's possession regarding this dispute and asked the court to permit the case to proceed. Although the ALC *sua sponte* offered to grant CFRE a continuance and order the Assessor to specifically respond to CFRE's discovery requests, CFRE declined the court's invitation because it believed the Assessor would simply respond that there is no additional information it could provide.

Ultimately, the ALC found CFRE was not entitled to the four percent ratio. In particular, the ALC held that only a "natural person" could qualify for the legal residence ratio.

---

2. At some point during this process, Adkins told Ray that if she were to retain a life estate in the property, with CFRE having the remainder, she could receive the four percent ratio. Ray amended the 2006 deed to reflect this and accordingly has received this lower ratio for all subsequent years. Thus, CFRE is only appealing the imposition of the six percent ratio for the 2007 tax year. We express no opinion regarding whether this transfer was valid.

The court further found that the General Assembly's failure to adopt two amendments to section 12–43–220 specifically stating that single-member limited liability companies could qualify demonstrates the General Assembly's original intent that they could not. Finally, the court supported its ruling with two Attorney General's Opinions stating these companies cannot receive the four percent ratio. CFRE appealed to the court of appeals, and this case was certified to us pursuant to Rule 204, SCACR.

## ISSUES PRESENTED

Three issues are raised on appeal: [3]

I. Did the ALC err in concluding that a single-member limited liability company that is not taxed as a corporation cannot qualify for the four percent legal residence property tax ratio?

II. Did the ALC err in not sanctioning the Assessor for its failure to respond to CFRE's discovery requests?

III. Is CFRE entitled to costs and attorney's fees?

## LAW/ANALYSIS

## I. ELIGIBILITY FOR FOUR PERCENT RATIO

CFRE argues the ALC erred in concluding that section 12–2–25(B)(1) only applies to income taxes [4] and only natural persons can qualify for the legal residence ratio. We agree.

Tax appeals to the ALC are subject to the Administrative Procedures Act (APA). *Long Cove Home Owners'*

---

3. We have consolidated CFRE's Issues on Appeal I, II, and IV because they all concern the ALC's interpretation of Section 12–2–25(B)(1) of the South Carolina Code (Supp.2010). Furthermore, we have restated CFRE's Issue on Appeal III to reflect the thrust of CFRE's argument as it solely concerns the harm CFRE suffered as a result of the Assessor's conduct during discovery.

4. It is not clear whether the ALC actually held section 12–2–25(B)(1) applies only to income taxes. In fact, the only reference to income taxes comes from the court's quotation of an Attorney General's Opinion and not from any holding of the court. However, because both parties argue this point in their briefs and it would be an additional sustaining ground under Rule 220(c), SCACR, we address this issue in full.

*Ass'n v. Beaufort County Tax Equalization Bd.*, 327 S.C. 135, 139, 488 S.E.2d 857, 860 (1997). Accordingly, we review the decision of the ALC for errors of law. S.C.Code Ann. § 1–23–380(5)(d) (Supp.2010). Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below. *City of Rock Hill v. Harris*, 391 S.C. 149, 152, 705 S.E.2d 53, 54 (2011).

■■ "The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature." *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007). In doing so, we must give the words found in the statute their "plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Id.* at 499, 640 S.E.2d at 459. Thus if the words are unambiguous, we must apply their literal meaning. *Id.* at 498, 640 S.E.2d at 459.

■ However, "the statute must be read as a whole and sections which are part of the same general statutory law must be construed together and each one given effect." *S.C. State Ports Auth. v. Jasper County*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006). We therefore should not concentrate on isolated phrases within the statute. *Id.* Instead, we read the statute as a whole and in a manner consonant and in harmony with its purpose. *State v. Sweat*, 379 S.C. 367, 376, 665 S.E.2d 645, 650 (Ct.App.2008), *aff'd*, 386 S.C. 339, 688 S.E.2d 569 (2010). In that vein, we must read the statute so "that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous," *id.* at 377, 665 S.E.2d at 651, for "[t]he General Assembly obviously intended [the statute] to have some efficacy, or the legislature would not have enacted it into law" *id.* at 382, 665 S.E.2d at 654.

■ In this case, interlaced with these standard canons of statutory construction is our policy of strictly construing tax exemption statutes against the taxpayer. *See Se.-Kusan, Inc. v. S.C. Tax Comm'n*, 276 S.C. 487, 489, 280 S.E.2d 57, 58 (1981). "This rule of strict construction simply means that constitutional and statutory language will not be strained or liberally construed in the taxpayer's favor. It does not mean that we will search for an interpretation in [DOR]'s favor where the plain and unambiguous language leaves no room for

construction." *Id.* It is "[o]nly when the literal application of the statute produces an absurd result will we consider a different meaning." *Id.* at 499–90, 280 S.E.2d at 58.

Section 12–43–220 provides, in relevant part:

(c)(1) The legal residence and not more than five acres contiguous thereto, when owned totally or in part in fee or by life estate and occupied by the owner of the interest, . . . are taxed on an assessment equal to four percent of the fair market value of the property. If residential real estate is held in trust and the income beneficiary of the trust occupies the property as a residence, then the assessment ratio allowed by this item applies. . . . If this property has located on it any . . . business for profit, this four percent value does not apply to those businesses. . . . For purposes of the assessment ratio . . . , a residence does not qualify as a legal residence unless the residence is determined to be the domicile of the owner-applicant.

Section 12–2–25(B) further provides that "[f]or South Carolina tax purposes: (1) a single-member limited liability company, which is not taxed for South Carolina income tax purposes as a corporation, is not regarded as an entity separate from its owner."

In the case before us, it is undisputed that the residence is on less than five acres, owned in fee by CFRE, has no business for profit conducted on it, and is Ray's sole domicile. It is further undisputed that CFRE is a single-member limited liability company that conducts no business for profit, is not taxed as a corporation, and has no other location besides the property in question. Thus, the only question presented is whether section 12–2–25(B)(1) permits single-member limited liability companies in the same position as CFRE to receive the lower ratio provided for in section 12–43–220.

■ Initially, we note that section 12–2–25(B)(1) appears in the "General Provisions" chapter of Title 12, which ostensibly applies to all the different forms of taxation provided for therein, be it income tax, corporate license fees, deed recording fees, gasoline tax, sales and use tax, county property tax, or any of the other myriad taxes imposed through that title. Furthermore, this section contains no language limiting its application within Title 12 in any way; rather, it simply

applies generally for "South Carolina tax purposes."[5] Thus, the plain language of section 12–2–25(B)(1) renders it applicable to all forms of taxation in Title 12, and we would have to "search for an interpretation in [DOR]'s favor" to hold otherwise. If the General Assembly had intended its scope to be limited, say to just income taxes, it should have placed this language in the chapter pertaining to those taxes as opposed to the general provisions. Indeed, in this very case the Assessor did not impose a deed recording fee for Ray's transfer of the property to CFRE, a fee it would have been subject to but for section 12–2–25(B)(1). *See* S.C. Rev. Rul. 04–6, 2004 WL 1277696, at *12 ("Deeds that transfer realty to the SMLLC from its single member, and deeds that transfer realty to the single member of the SMLLC from the SMLLC, are not subject to the deed recording fee if the SMLLC is ignored for all tax purposes under the provisions of Code Section 12–2–25(B).").

Even under the principles of strict construction, we cannot ignore the plain language of section 12–2–25(B)(1) that contains no restrictions on its applicability within Title 12. *See Se.-Kusan,* 276 S.C. at 490, 280 S.E.2d at 59 ("The clear language [of the exemption] does not restrict or condition the exemption upon use [of the machinery] by the owner. To allow Southeastern to claim this exemption produces no absurd result.... For these reasons, Southeastern may claim the exemption...."). In fact, restricting its application to solely income taxes would render it completely superfluous. Under the income tax provisions in Title 12, an entity that is not taxed as a corporation under State law will be taxed through the individual member. S.C.Code Ann. § 12–6–510 (2000); *Anonymous Taxpayer v. S.C. Dep't of Rev.,* No. 07–ALJ–17–0189–CC, 2007 WL 2782804, at *2–3 (S.C. Admin. L. Judge Div. Aug. 23, 2007). Thus, for income tax purposes the

---

5. Prior to the 2001 amendments to section 12–2–25(B), that section explicitly stated that single-member limited liability companies received this treatment for *"all* South Carolina tax purposes." S.C.Code Ann. § 12–2–25(B) (2000) (emphasis added). The 2001 amendments removed the word "all" from the language, but they also added a host of other provisions to subsection (B) that are not relevant to this case. *See* 2001 Act No. 89 § 5. We do not believe this deletion was substantive, and as discussed *infra,* the Department of Revenue (DOR) has not treated it as such.

company is already "not regarded as an entity separate from its owner," irrespective of any other provision; there would be no need for section 12–2–25(B)(1) if its scope were limited to just income taxes.

 We further note that DOR, the agency charged with administering this State's revenue laws, has consistently interpreted section 12–2–25(B)(1) as applying broadly. "The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Dunton v. S.C. Bd. of Exam'rs in Optometry,* 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987). For example, we will reject an agency's interpretation if it conflicts with the statute's plain language. *Brown v. Bi–Lo, Inc.,* 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003).

At the hearing, CFRE introduced five publications from DOR which contain DOR's opinion that section 12–2–25(B)(1) applies to all taxes, not just income taxes: (1) a report from 2004 on legislative changes stating that the definitions in section 12–2–25 apply to all titles administered by DOR; (2) an undated tax worksheet that states "if a single member LLC is disregarded as an entity separate from its owner for federal income tax purposes, it is similarly disregarded for South Carolina income tax purposes" but then, in a later section, states generally that section 12–2–25(B)(1) "provides that a single member LLC which is not taxed as a corporation will be ignored for all South Carolina tax purposes"; (3) a business tax guide from 2007 that provides, "A single member limited liability corporation [sic] that elects to be disregarded for federal income tax purposes will be disregarded for state tax purposes"; and (4) two publications concerning tax incentives for economic development, one from 2008 and one from 2009, stating that this section "provides that a single member limited liability company that is not taxed as a corporation for South Carolina income tax purposes will be ignored for all South Carolina tax purposes."

DOR has also applied section 12–2–25(B)(1) to provide this tax treatment in specific situations beyond income taxes. We have already noted that DOR believes the company is exempt from deed recording fees if it meets the criteria of section 12–

2–25(B)(1). *See* S.C. Rev. Rul. 04–6, 2004 WL 1277696, at *12. DOR also found section 12–2–25(B)(1) means "these entities are treated as part of their member . . . for South Carolina sales and use tax purposes as well as South Carolina income tax purposes." S.C. Rev. Advis. Bull. 01–1, 2001 WL 34035772, at *2; *see also* S.C. Priv. Rev. Op. 00–4, 2000 WL 33941904, at *1–2. Additionally, DOR concluded that, based on section 12–2–25(B)(1), these single-member limited liability companies are not required to pay corporate license fees. S.C. Rev. Rul. 98–11, 1998 WL 34035222, at *2.

Because there is no limitation within section 12–2–25(B)(1) as to which areas of taxation it applies, DOR's construction of this section—both before and after the amendment removing the word "all"—comports with its plain language. Furthermore, we cannot find any compelling reasons to disregard DOR's interpretation, and the Assessor has pointed to none. DOR's own broader interpretation also militates against any effects of strictly construing this statute against CFRE. Therefore, we accord due deference to this agency's view and hold that section 12–2–25(B)(1) generally applies to all forms of taxation under Title 12 absent some other provision limiting it.[6]

 We also hold the ALC erred in finding that only a natural person can qualify for the legal residence ratio.[7]

---

**6.** In reaching this conclusion, we assign no weight to the two Attorney General's Opinions relied upon the ALC. *See Eargle v. Horry County*, 344 S.C. 449, 455, 545 S.E.2d 276, 280 (2001) ("[T]his Court is not bound by opinions of the Attorney General."). The first one did not address the impact of section 12–2–25(B)(1) on section 12–43–220. *See generally* Op. S.C. Att'y Gen. (Sept. 23, 2003), 2003 WL 22378701. The second found section 12–2–25(B)(1) was the General Assembly's attempt to enact a State counterpart to the federal statutes disregarding the corporate form in these circumstances for income tax purposes without citing any authority for this proposition. *See* Op. S.C. Att'y Gen. (Feb. 26, 2009), 2009 WL 580568, at *4. Furthermore, the second relied on the fact that this section references income tax in support of its argument that its scope is limited, *see id.*, but such a reading renders those words meaningless. The reference to income taxes merely is a threshold requirement.

**7.** The ALC based its ruling mainly on the use of the first person in the following certification signed by the applicant:

Under penalty of perjury, I certify that:

Strictly construing section 12–43–220, it does appear at first blush that only a natural person can qualify for that ratio. However, we cannot examine section 12–43–220 in isolation, and the ALC's order overlooked the specific impact of section 12–2–25(B)(1). That section disregards the corporate form for single-member limited liability companies that are not taxed as corporations, thereby merging the existence of the company and its member for all tax purposes. This means the company will qualify for any tax benefits its member qualifies for. Section 12–2–25(B)(1) is therefore the General Assembly's conferral of a special benefit on these companies that is not available for other business organizations that are also legally separate entities. It is not that the company itself is eligible independently, but rather it is eligible derivatively through its member; if that member is a natural person who meets all the criteria imposed by section 12–43–220 with respect to property titled in the company's name, then the company is entitled to this lower ratio. Because it is undisputed that Ray herself meets all the requirements of section 12–43–220 with respect to CFRE's property, CFRE is entitled to the legal residence ratio. Accordingly, we remand this matter for a determination of the precise refund owed to it.

██ As a final matter, we wish to address the ALC's reliance on two unenacted pieces of legislation specifically incorporating single-member limited liability companies within section 12–43–220 as demonstrative of the General Assembly's intent with respect to the current version of section 12–2–25(B)(1).[8] The ALC's logic in relying on these bills went as

---

(A) the residence which is the subject of this application is my legal residence and where I am domiciled at the time of this application and that I do not claim to be a legal resident of a jurisdiction other than South Carolina for any purpose; and

(B) that neither I nor any other member of my household is residing in or occupying any other residence which I or any member of my immediate family has qualified for the special assessment ratio allowed by this section.

S.C.Code Ann. § 12–43–220(c)(2)(ii); *see also* 27 S.C.Code Ann. Reg. 117–1800.1(2) (Supp.2010) ("For property tax purposes the term 'Legal Residence' shall mean the permanent *home* or *dwelling place* owned by a person and occupied by the person thereof or where he or she is *domiciled.*" (emphasis added)).

8. In 2008, the following language was proposed to be added to section 12–43–220(c)(2)(i):

follows: because an amendment presumably changes a statute, these bills would only be necessary to change section 12–2–25(B)(1)'s impact on section 12–43–220(c), which means 12–2–25(B)(1) currently does not permit these companies to receive the lower ratio. *See Key Corporate Capital, Inc. v. County of Beaufort,* 373 S.C. 55, 60, 644 S.E.2d 675, 678 (2007) ("We have long acknowledged the presumption that in adopting an amendment to a statute, the Legislature intended to change the existing law.").

However, the Supreme Court of the United States has stated the problem of relying on unenacted legislation quite succinctly:

> We have stated, however, that failed legislative proposals are "a particularly dangerous ground on which to rest an interpretation of a prior statute. Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change."

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 187, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (quoting *Pension Benefit Guar. Corp. v. LTV Corp.,* 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990)). "The interpretation placed upon an existing statute by a subsequent group of Congressmen who are promoting legislation and who are unsuccessful has no persuasive significance here." *United States v. Wise,* 370 U.S. 405, 411, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962). Therefore, "[w]hether Congress thought the proposal unwise ... or unnecessary, we cannot tell; accordingly, no inference can properly be drawn from the failure of the Congress to act." *United States v. Price,* 361 U.S. 304, 312, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960); *see also*

---

A single-member limited liability company where the single-member is an individual and that is not taxed for South Carolina income tax purposes as a corporation shall be considered an owner-occupant for purposes of the special property tax assessment ratio allowed by this item, if the single-member limited liability company is able to meet all the requirements of subsection (c).

S. 1313, 117th Gen. Assem. (S.C.2008). The proposed amendment did not pass. The following year, an identical amendment was introduced and never left the committee. *See* S. 230, 118th Gen. Assem. (S.C.2009).

*Whitner v. State,* 328 S.C. 1, 9, 492 S.E.2d 777, 781 (1997) ("Generally, the legislature's subsequent acts 'cast no light on the intent of the legislature which enacted the statute being construed.' ").

The present case perfectly illustrates the very folly of relying on unenacted legislation. Both CFRE and the Assessor could use the General Assembly's failure to enact Senate Bills 1313 and 230 equally to their advantage: the Assessor could argue the bills' failure demonstrates the General Assembly's intent to exclude single-member limited liability companies from section 12–43–220, while CFRE could argue that because an amendment presumes a change to the existing statute, these bills were unnecessary as sections 12–2–25(B)(1) and 12–43–220 already conferred this benefit. Bills are introduced and fail in the General Assembly for any number of reasons, and it would be beyond speculation for us or any court to divine some import and meaning from the mere fact that the bills did not become law. Absent something more, it was error for the ALC to rely on them. *Cf. Stardancer Casino, Inc. v. Stewart,* 347 S.C. 377, 385 n. 13, 556 S.E.2d 357, 361 n. 13 (2001) (stating it was permissible to rely, in part, on unenacted amendments because the failed bills were proposed by the same General Assembly that passed the legislation in question).

## II. DISCOVERY REQUESTS

CFRE next argues that the ALC erred by not sanctioning the Assessor for its failure to formally respond to CFRE's interrogatories and production requests. We disagree.

As a threshold matter, CFRE has waived this issue. A litigant cannot concede an issue at trial and then raise it on appeal. *Southern Ry. v. Routh,* 161 S.C. 328, 333, 159 S.E. 640, 642 (1930). At the hearing, CFRE moved to prevent the Assessor from presenting any evidence or arguments because the Assessor never responded to CFRE's discovery requests. During arguments on the motion, the court *sua sponte* offered to continue the proceedings and order a formal response from the Assessor. However, CFRE declined the court's invitation and agreed that a continuance would be unlikely to produce anything further. CFRE then

admitted "there are no material facts in dispute and the controversy [is] one of the law." This concession before the ALC that CFRE would receive no further information from the Assessor and there were no facts in dispute amounts to a waiver of any discovery issues. If CFRE wished to have the discovery process formally completed because there truly were undisclosed facts, it should have taken the *sua sponte* offer compelling formal responses given by the court.

However, CFRE contends it has not waived this issue because it learned of the existence of another witness after CFRE's initial concessions to the ALC. Adkins, in cross examination, revealed that her staff makes the initial classification of which tax ratio should be applied to the taxpayer, but she alone has the final decision of which ratio to apply. CFRE therefore contends that there is another person who has come in contact with this case previously unknown to it. However, Adkins' testimony makes clear that the unknown witness would not add any material facts or clarify any facts in dispute. Therefore, the existence of this witness is immaterial and CFRE's concession that it would receive nothing more of substance from the Assessor still stands.

 Even if CFRE has not waived this issue, the ALC did not abuse its discretion in not ordering sanctions against the Assessor. "In determining the appropriateness of a sanction, the court should consider such factors as the precise nature of the discovery and the discovery posture of the case, willfulness, and degree of prejudice." *McNair v. Fairfield County*, 379 S.C. 462, 467, 665 S.E.2d 830, 832 (Ct.App.2008). A trial court's decision on whether or not to impose discovery sanctions is reviewed for abuse of discretion. *Jamison v. Ford Motor Co.*, 373 S.C. 248, 270, 644 S.E.2d 755, 767 (Ct.App.2007); *see also Original Blue Ribbon Taxi Corp. v. SC Dep't of Motor Vehicles*, 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct.App.2008) (stating that the reviewing tribunal may affirm, reverse, or remand the decision of the ALC if "the substantive rights of the petitioner has been prejudiced because the finding, conclusion, or decision is ... arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.").

An affirmative duty does exist to answer interrogatories and respond to requests to produce. *See* Rule 33(a), SCRCP ("Each interrogatory *shall* be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objections shall be stated in lieu of an answer." (emphasis added)); Rule 34(b), SCRCP ("The party upon whom the request is served *shall* serve a written response ....." (emphasis added)); *see also Samples v. Mitchell,* 329 S.C. 105, 109–10, 495 S.E.2d 213, 215–16 (Ct.App.1997) (stating that parties must disclose all evidence, or at least the existence of evidence, that relates to the case, not only evidence which they intend to use at trial).[9]

Here, the Assessor failed to formally answer any of the standard interrogatories or production requests. However, the ALC required the Assessor to produce various documents and enter them into the record, an order with which the Assessor fully complied. Furthermore, the documents submitted to the court created a complete record of the facts. Thus, despite arguing that it has been "prevented from being fully prepared for trial," there is no evidence of what material facts were not produced to CFRE, and anything CFRE contends is missing immaterial and irrelevant. Therefore, CFRE ultimately received all pertinent and material information it would have been entitled to had the Assessor specifically answered CFRE's requests.

Thus, notwithstanding the duty to formally answer the interrogatories and production requests, CFRE was not prejudiced by the Assessor's failure to do so. Although CFRE argues that *Downey v. Dixon,* 294 S.C. 42, 362 S.E.2d 317 (Ct.App.1987), mandates that prejudice be presumed where there has been a failure of discovery, it fails to relay the remainder of the sentence in question from *Downey:* "[P]rejudice must be presumed and, *unless the party who has failed to submit to discovery can show lack of prejudice,* reversal is required." *Id.* at 46, 362 S.E.2d at 319 (emphasis added). As the Assessor correctly notes, CFRE itself conceded that there

---

9. Rule 21 of the Rules of Procedure for the Administrative Law Court states that "[d]iscovery shall be conducted according to the procedures in Rules 26–37, SCRCP, except that only the standard interrogatories provided by SCRCP 33(b), as applicable to the pending contested case, are permitted."

was nothing more the Assessor could produce that is of any consequence. The sole undiscovered fact that CFRE contends exists is the identity of an unnamed employee of the Assessor whom CFRE believes could be an additional witness, but that witness would provide no additional information. Accordingly, the Assessor has met its burden in proving that CFRE suffered no prejudice as a result of its merely technical failure to comply with this Court's discovery rules. Therefore, we hold that the ALC did not abuse its discretion in not sanctioning the Assessor.

### III. COSTS

■ In its brief, CFRE requested that this Court award costs in the amount of $646.50, the same amount it requested from the ALC. Furthermore, in its reply brief, CFRE requested an award of attorney's fees. However, "[i]n an action covered by [the South Carolina Revenue Procedures Act (SCRPA)], no costs or disbursements may be charged or allowed to either party, except for the service of process and attendance of witnesses." S.C.Code Ann. § 12–60–3350 (Supp.2010). As this action is governed by the SCRPA in the tribunals below, *see id.* § 12–60–2510, *et seq.*, CFRE is not entitled to attorney's fees but may be entitled to some costs. Because CFRE did not identify which costs, if any, are attributable to service of process or attendance of witnesses, the court on remand is to determine which costs are appropriate for CFRE to receive. To the extent CFRE desires an award of costs and attorney's fees incurred before this Court, it must make the appropriate motion at the appropriate time.

### CONCLUSION

Therefore, we hold that CFRE was entitled to the four percent legal residence ratio for the 2007 tax year. Accordingly, we remand this case to the ALC for a determination of the refund due to CFRE. A remand is also in order for a determination of which costs, if any, CFRE may receive. However, we affirm the ALC's denial of sanctions against the Assessor for its failure to respond to CFRE's discovery requests.

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.