**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(D)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Richard Beltram, Appellant/Respondent,

v.

South Carolina Department of Revenue, Respondent/Appellant.

Appellate Case No. 2017-000968

Appeal From The Administrative Law Court
S. Phillip Lenski, Administrative Law Judge

Unpublished Opinion No. 2019-UP-349
Heard June 5, 2019 – Filed October 23, 2019

**AFFIRMED IN PART AND AFFIRMED AS MODIFIED IN PART**

Ginger D. Goforth, of Ward Law Firm, of Spartanburg, for Appellant/Respondent.

Nicole Martin Wooten and Jason Phillip Luther, both of the S.C. Department of Revenue; and William J. Condon, Jr., of the Office of the State Treasurer, all of Columbia, for Respondent/Appellant.

**PER CURIAM:** This appeal arises from the South Carolina Department of Revenue's (the Department's) attempts over many years to collect withholding taxes, penalties, and interest owed by Intedge Industries (Intedge) from Richard Beltram, Intedge's former president. Beltram appeals the Administrative Law Court's (ALC's) final amended order, arguing the ALC (1) erred in calculating the outstanding tax liabilities of Intedge on the withholding tax quarters instead of the tax lien filing dates; (2) violated his due process rights by awarding interest that accrued due to delay caused by the Department and failing to dismiss the case due to what he contends was lack of timely notice of the tax liens; and (3) abused its discretion by awarding him only $675 in attorney's fees as a sanction for the Department's discovery violations. The Department also appeals the ALC's final amended order, arguing (1) this court should dismiss Beltram's appeal because he failed to pay the taxes due or post a bond before appealing as required by section 12-60-3370 of the South Carolina Code (2014); (2) the ALC erred in barring the Department from collecting taxes from Beltram that were secured by tax liens against Intedge filed more than ten years before the Department issued its determination; and (3) the ALC abused its discretion by imposing the $675 sanction. We affirm as modified.

## I. FACTS

In 1988, Intedge, a New Jersey corporation, moved its operations to Woodruff, South Carolina. Beltram was the president of Intedge from 1983 until July 1, 2005. While Beltram was president, it is undisputed he had the authority to sign checks on behalf of Intedge, the power to hire and fire employees, the ability to sign contracts for Intedge, access to corporate records, majority control over Intedge, and the authority to resolve any outstanding tax liability.

Intedge submitted quarterly South Carolina withholding tax returns for the quarters ending in September 1999 through December 2005 except for the quarter ending September 2005. Although the returns showed the withholding tax due had been paid to the Department, Intedge failed to pay all of the withholding taxes it reported. Consequently, the Department issued proposed notices of assessment to Intedge. The Department then issued final assessments against Intedge and filed tax liens against Intedge for each quarter. The Department filed the notices of assessment within the thirty-six-month statute of limitations found in section 12-54-85(A) of the South Carolina Code (2014).[1] Although, as we have noted, the Department issued

---

[1] Section 12-54-85(A) provides, "taxes must be determined and assessed within thirty-six months from the date the return or document was filed or due to be filed, whichever is later."

assessments and filed liens against Intedge for withholding periods dating back to 1999, the dates of the notices, assessments, and tax liens relevant to this appeal are as follows:

| Withholding Period Ending | Date of Proposed Notice of Assessment (PNOA) to Intedge | Date of Final Assessment | Lien Date |
|---|---|---|---|
| September 2003 | 02/17/2004 | 05/18/2004 | 09/07/2004 |
| December 2003 | 07/30/2004 | 10/29/2004 | 02/16/2005 |
| March 2004 | 07/30/2004 | 10/29/2004 | 02/16/2005 |
| June 2004 | 11/1/2004 | 02/01/2005 | 05/23/2005 |
| September 2004 | 01/14/2005 | 04/15/2005 | 08/03/2005 |
| December 2004 | 05/05/2005 | 08/03/2005 | 09/06/2005 |
| March 2005 | 06/01/2005 | 08/31/2005 | 10/7/2005 |
| June 2005 | 11/4/2005 | 02/03/2005 | 03/06/2006 |

On July 1, 2005, Beltram sold Intedge's assets to Intedge Manufacturing, Inc., a company owned by his uncle. Intedge officially closed on October 1, 2005. The Secretary of State administratively dissolved Intedge on January 16, 2009.

On September 2, 2009, the Department issued a responsible party Proposed Notice of Assessment to Beltram, informing him he was being held personally responsible for Intedge's sales and withholding taxes, interest, and penalties for the period from September 1999 to December 2005 based on his position as Intedge's president and majority shareholder. On December 1, 2009, Beltram filed a timely protest contesting his personal liability for Intedge's sales and withholding taxes, interest, and penalties. The Department did not issue its determination until May 1, 2013— over three years after Beltram filed his protest—in violation of section 12-60-450(E)(3) of the South Carolina Code (2014).[2] In its determination, the Department concluded Beltram was personally responsible for Intedge's delinquent withholding tax, sales tax, penalties, and interest for the period of September 1999 through December 2005. The Department also found Beltram's liability for Intedge's outstanding tax liabilities was not extinguished by the expiration of the ten-year tax lien period because the liens were filed against Intedge, not Beltram. On May 27, 2013, Beltram filed a Request for a Contested Case hearing.

The ALC held the contested case hearing in September 2014. At the hearing, Bruce Owens, a Department Collections Supervisor, testified he received Beltram's protest.

---

[2] At the time Beltram filed his protest and the Department filed its determination, section 12-60-450(E)(3) provided, "The [D]epartment must issue the determination on a proposed assessment not later than nine months after the date the written protest of claim was filed."

Owens stated Beltram, as the responsible party, is deemed to have notice of the assessment of his business.

In its amended final order dated March 17, 2017, the ALC ruled (1) Beltram was a withholding agent of Intedge from September 1999 to July 2005, and as such, he was liable for Intedge's outstanding withholding taxes, interest, and penalties; (2) notice to Intedge constituted notice to Beltram, and the Department timely issued notices of the assessments to Intedge within the applicable three-year statute of limitations; (3) the withholding tax liens became effective against Intedge when they were filed in Spartanburg County, the liens filed ten or more years before the Department issued its determination on May 1, 2013, had expired, and the taxes underlying these liens (i.e., the liens relating to withholding periods from 1999 to May 1, 2003) could no longer be collected from Intedge or Beltram; (4) Beltram was not personally liable for any tax liability accrued after July 2005, when he lost control of Intedge by selling the company to his uncle; (5) Beltram's due process rights were not violated by the Department's delay in bringing this case; (6) as a remedy for the Department's delay in reaching a determination, Beltram was not responsible for penalties that accrued from Intedge's outstanding tax liabilities; (7) Beltram was responsible for the full amount of interest owed on Intedge's outstanding tax liabilities; (8) no authority authorized the ALC to award Beltram attorney's fees; and (9) Beltram was entitled to a $675 deduction of the amount owed to the Department as a sanction for the Department's failure to provide requested discovery.

Both Beltram and the Department appealed the ALC's amended final order. The Department then moved to dismiss Beltram's appeal based on Beltram's failure to comply with section 12-60-3370. On July 13, 2017, this court denied the motion to dismiss and remanded the case to the ALC to determine "the amount of taxes Beltram must pay or the amount of the bond Beltram must post pursuant to section 12-60-3370." The order also stated neither party was barred from raising a jurisdictional issue in their arguments on appeal. The ALC order on remand found Beltram was required to pay $54,510.50. Beltram thereafter deposited the amount with the Department.

## II.

The Administrative Procedures Act (APA) governs appellate review of decisions from the ALC. *Risher v. S.C. Dep't of Health & Envtl. Control*, 393 S.C. 198, 203, 712 S.E.2d 428, 431 (2011).

The review of the [ALC]'s order must be confined to the record. The court may not substitute its judgment for the judgment of the [ALC] as to the weight of the evidence on questions of fact. The court of appeals may affirm the decision or remand the case for further proceedings; or[ ] it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1-23-610(B) (Supp. 2018).

An appellate court should only reverse the ALC's order if it is unsupported by substantial evidence in the record or contains an error of law. *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles*, 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct. App. 2008); *see also Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue*, 388 S.C. 138, 144, 694 S.E.2d 525, 528 (2010) ("A reviewing court may reverse the decision of the ALC [when] it is in violation of a statutory provision or it is affected by an error of law."). "Substantial evidence is not a mere scintilla of evidence nor evidence viewed blindly from one side, but is evidence [that], when considering the record as a whole, would allow reasonable minds to reach the conclusion that the agency reached . . . ." *Leventis v. S.C. Dep't of Health & Envtl. Control*, 340 S.C. 118, 130, 530 S.E.2d 643, 650 (Ct. App. 2000) (quoting *Welch Moving & Storage Co. Inc. v. Pub. Serv. Comm'n of S.C.*, 301 S.C. 259, 261, 391 S.E.2d 556, 557 (1990)). "However, '[q]uestions of statutory interpretation are questions of law, which [the appellate court is] free to decide without any deference to the court below.'" *Centex Int'l, Inc. v. S.C. Dep't of Revenue*, 406 S.C. 132, 139, 750 S.E.2d 65, 69 (2013) (first alteration in original) (quoting *CFRE, LLC v. Greenville Cty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011)).

### III. The Department's Appeal

A. <u>Section 12-60-3370 and Appellate Jurisdiction</u>

The Department argues Beltram's appeal should be dismissed because he failed to comply with the procedural requirements of section 12-60-3370 before appealing, depriving us of appellate jurisdiction over Beltram's appeal. Section 12-60-3370 provides, "Except as otherwise provided, a taxpayer shall pay, or post a bond for, all taxes, not including penalties or civil fines, determined to be due by the administrative law judge before appealing the decision to the court of appeals." *See also* S.C. Code Ann. § 12-60-30(27) (2014) (providing under the SCRPA, "tax" or "taxes" includes interest); *Great Games, Inc. v. S.C. Dep't of Revenue*, 339 S.C. 79, 82 n.5, 529 S.E.2d 6, 7 n.5 (2000) ("The failure of a party to comply with the procedural requirements for perfecting an appeal *may* deprive the court of 'appellate' jurisdiction over the case, but it does not affect the court's subject matter jurisdiction." (emphasis added)).

Beltram asserts he did not pay the taxes or post a bond because he could not determine the amount he owed based on the ALC's final amended order, which did not definitively state the amount—including interest—that Beltram owed to the Department. He also asserts he decided to file his appeal without paying the taxes or posting a bond because he did not want to miss the deadline for filing his appeal. Furthermore, when the Department filed a motion to dismiss Beltram's appeal with prejudice based on his failure to comply with section 12-60-3370, this court denied the motion to dismiss and remanded the case to the ALC to determine "the amount of taxes Beltram must pay or the amount of the bond Beltram must post pursuant to section 12-60-3370." After receiving briefs from the parties on their positions regarding the amount of tax or bond Beltram must pay pursuant to section 12-60-3370, the ALC issued an order on remand finding Beltram was required to pay $54,510.50. Beltram thereafter deposited the amount with the Department. Accordingly, we decline to dismiss Beltram's appeal for lack of appellate jurisdiction, and we address the merits of his appeal below. However, we first address the merits of the Department's appeal.

B. <u>Tax Lien Ten-Year Expiration Period</u>

The Department argues the ALC erred in ruling the Department was barred from collecting from Beltram taxes that were secured by liens filed against Intedge more than ten years before the Department issued its May 1, 2013 determination. The Department asserts the date of the proposed notice of assessment to Beltram as Intedge's responsible party—September 2, 2009—is the date that stopped the lien

expiration period, not the date of the department determination—May 1, 2013; accordingly, the Department maintains none of the tax liens against Intedge had expired as of September 2009.  We disagree.

First, the tax liens filed against Intedge are effective against Beltram, whose liability for the outstanding withholding taxes, interest, and penalties is derived from his position as a withholding agent of Intedge.[3]  *See* S.C. Code Ann. § 12-8-520(A) (2014) ("An employer paying wages to an employee shall withhold income tax for that employee if at the time of payment the wages are expected to equal one thousand dollars or more during the year . . . ."); S.C. Code Ann. § 12-8-2010(A) (2014) ("A withholding agent who fails to withhold or pay to the [D]epartment an amount required by this chapter is personally and individually liable for the amount of tax not withheld or paid.").  Accordingly, we hold the ten-year expiration period for the tax liens filed against Intedge also applies to Beltram.  *See* S.C. Code Ann. § 12-8-2030 (2014) ("An amount withheld under this chapter must be held in trust for the State and is a lien against all property . . . of the withholding agent.  The lien becomes effective after it has been properly recorded in the county where the withholding agent's business is located."); S.C. Code Ann. § 12-54-120(A)(2) (2014) ("This lien . . . continues for ten years from the date of filing.").  Because the tax liens filed against Intedge are effective against Beltram, the Department cannot file new tax liens against Beltram following this appeal.

Next, we find the expiration period for the tax liens—much like the expiration period for judgment liens, which are also created by statute—could not be tolled or renewed.  *Cf. Gordon v. Lancaster*, 425 S.C. 386, 390–93, 823 S.E.2d 173, 175–76 (2018) (reinstating South Carolina's "historical interpret[ation]" that judgment liens expire after ten years, "a time period that cannot be renewed"); *Home Port Rentals, Inc. v. Moore*, 359 S.C. 230, 237, 597 S.E.2d 810, 814 (Ct. App. 2004) ("We find, as many courts of this State before us, that a judgment is 'utterly extinguished' ten years from the date of its entry and the ten-year enforcement period cannot be

---

[3] Neither party contests that Beltram, as president and majority shareholder of Intedge, was a withholding agent of Intedge.  *See* S.C. Code Ann. § 12-8-2010(D) (2014) ("For purposes of this section, the term 'withholding agent' includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.").  Additionally, as the ALC stated, the Department's argument the tax liens it filed against Intedge do not apply to Beltram is inconsistent with the Department's argument the notices it sent to Intedge—not to Beltram personally—applied to Beltram.

tolled."), *aff'd as modified,* 369 S.C. 493, 632 S.E.2d 862 (2006); *Commercial Credit Loans, Inc. v. Riddle*, 334 S.C. 176, 185, 512 S.E.2d 123, 128 (Ct. App. 1999) (stating "the public policy of this state is to limit the life of a judgment to ten years," and holding "this enforcement period is not tolled by bringing an action to enforce the lien"); *see also Garrison v. Owens*, 258 S.C. 442, 446–47, 189 S.E.2d 31, 33 (1972) ("A judgment lien is purely statutory, its duration as fixed by the legislature may not be prolonged by the courts and the bringing of an action to enforce the lien will not preserve it beyond the time fixed by the statute, if such time expires before the action is tried."), *overruled by Linda Mc Co. v. Shore*, 390 S.C. 543, 703 S.E.2d 499 (2010).[4] Thus, we believe the expiration period for the tax liens ran continuously from the date the liens became effective—when they were filed in the appropriate county—and expired ten years from that date. *See* § 12-8-2030 ("An amount withheld under this chapter must be held in trust for the State and is a lien against all property . . . of the withholding agent. The lien becomes effective after it has been properly recorded in the county where the withholding agent's business is located."); § 12-54-120(A)(2) ("This lien . . . continues for ten years from the date of filing."). Accordingly because all of the tax liens filed against Intedge were filed over ten years ago, the tax liens have expired.

We express no opinion on whether the Department could normally seek to collect outstanding tax liabilities through other means when a tax lien has expired. *See* § 12-54-120(C) ("The department, in addition to other remedies for enforcement of its tax lien, retains all remedies available to a judgment creditor."). However, in the present case, we note the Department did not appeal the issue of whether the ten-year tax lien expiration period bars the Department from collecting withholding taxes for which liens were filed more than ten years ago. Accordingly, it is the law of this case. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) ("[A]n unappealed ruling, right or wrong, is the law of the case."). Moreover, at oral argument, the Department admitted it has a policy, which was not included in the record on appeal, to not pursue taxes from a taxpayer after the ten-year tax lien period has expired.

Accordingly, we affirm as modified the ALC's finding and conclude the ten-year expiration period for tax liens has expired for all of tax liens filed by Department against Intedge, rather than just those filed prior to May 1, 2003—ten years before the Department filed its determination. Because all tax liens have expired and the

---

[4] *Linda Mc Co.* was overruled by *Gordon*, wherein the supreme court reinstated the rule for judgment liens as found in *Garrison*. *Gordon*, 425 S.C. at 390–93, 823 S.E.2d at 175–76.

law of the case precludes the Department from collecting the underlying taxes, the related penalties and interest are likewise uncollectible.

## C. Discovery Violation and Sanction/Attorney's Fees[5]

During the contested case hearing, Owens, a Department collections supervisor, testified he had a copy of Beltram's protest; Beltram's counsel stated he had requested the protest in discovery but had not been provided it. Beltram's counsel asked to be supplied the protest, but the Department stated, to their knowledge, the protest was not in their file. Owens stated in late 2009 and early 2010, he sent Beltram a letter regarding the liabilities, and he stated Beltram sent him a letter back, asking for another document and for "some details in the form of a sales agreement because he was referencing another business that had purchased his company." Owens stated he did not have these documents with him, but he could produce them. Beltram's counsel renewed his request for the letters and the protest, explaining he originally requested the documents over a year before the hearing. The ALC questioned the Department about its position that it did not have these documents, despite Owen's testimony to the contrary. The Department agreed to provide the documents to Beltram if Owens had them. Beltram moved to dismiss the case due to the Department's discovery violations or, if the ALC did not dismiss the case, for additional attorney's fees for the extra work and travel required to retrieve and review the documents. The Department argued the requested documents were not material, and the Department had no "wrongful intent" warranting additional attorney's fees. The Department also asserted attorney's fees were not allowed under section 12-60-3350 of the South Carolina Code (2014).[6] The ALC denied Beltram's motion to dismiss and ordered the Department to give the documents to Beltram. The Department produced the documents, which indicated the Department knew in March 2007 that Intedge was closed and there was a new owner, but the Department continued to send assessments to Intedge until 2009. Additionally, some of the documents were internal documents that would require explanation to understand.

Beltram argues the ALC abused its discretion in awarding him only $675 in attorney's fees for the Department's discovery violations instead of awarding him "at

---

[5] Because the parties' attorney's fees/sanction issues are substantially similar and relate to the same $675 award, we discuss these issues together.

[6] Section 12-60-3350 provides in an action brought pursuant to the South Carolina Revenue Procedures Act (SCRPA), "no costs or disbursements may be charged or allowed to either party, except for the service of process and the attendance of witnesses."

least the additional $1,875.00 in unanticipated attorney's fees, not to mention the stress and inconvenience caused by the [Department's] delay." Beltram states a trial judge can award attorney's fees as a sanction, and the ALC may govern and conduct discovery pursuant to the South Carolina Rules of Civil Procedure (SCRCP), including issuing sanctions under Rule 37, SCRCP.

The Department notes it is unclear whether the ALC awarded Beltram the $675 as attorney's fees or as a sanction for the Department's alleged discovery violation; regardless, the Department argues the $675 reduction in Beltram's tax liability was an error. The Department asserts attorney's fees are prohibited in cases brought under the SCRPA. The Department contends the ALC lacked authority to reduce Beltram's tax liability because (1) no statutory or case law permits the ALC to reduce an assessment once it determines the taxpayer is liable for an outstanding tax assessment, and (2) the ALC does not have authority to decide civil matters or award monetary damages.

We find the ALC awarded Beltram a $675 reduction of his tax liabilities as a sanction against the Department for its discovery violations, not as attorney's fees. Next, we find the ALC did not abuse its discretion in ordering a sanction of $675 for the Department's discovery violation. *See CFRE*, 395 S.C. at 82, 716 S.E.2d at 885 ("A trial court's decision on whether or not to impose discovery sanctions is reviewed for abuse of discretion."). Beltram made a discovery request in this case, and the Department had the duty to respond. *See id.* at 83, 716 S.E.2d at 885 (providing an affirmative duty exists to respond to requests to produce); *see also* Rule 34(b), SCRCP ("The party upon whom the request is served *shall* serve a written response . . . ." (emphasis added)); SCALC Rule 68 ("The South Carolina Rules of Civil Procedure and the South Carolina Appellate Court Rules, in contested cases and appeals respectively, may, in the discretion of the presiding administrative law judge, be applied to resolve questions not addressed by these rules."); *Samples v. Mitchell*, 329 S.C. 105, 109–10, 495 S.E.2d 213, 215–16 (Ct. App. 1997) (stating that parties must disclose all evidence responsive to the discovery request, or at least the existence of such evidence, that relates to the case, not just the evidence they intend to use at trial). While the ALC found the documents not provided by the Department during discovery "did not help [Beltram] with his case" and the Department did not act in bad faith in not providing the documents to Beltram, the ALC also noted the documents were found by Owens—the Department's employee—and "[h]ad the Department interviewed [Owens] to any degree prior to his testimony, it should have learned of these records," and Beltram "may have more actively pursued a settlement in this manner, had these documents been disclosed, as they should have been." *See CFRE*, 395 S.C. at 82, 716 S.E.2d at 885 ("In

determining the appropriateness of a sanction, the court should consider such factors as . . . willfulness[] and degree of prejudice." (quoting *McNair v. Fairfield County*, 379 S.C. 462, 467, 665 S.E.2d 830, 832 (Ct. App. 2008))). Additionally, the ALC noted the Department's failure to find these documents and give them to Beltram likely resulted from the Department's "inordinate delay in this case." *See id*. ("In determining the appropriateness of a sanction, the court should consider such factors as the precise nature of the discovery and the discovery posture of the case . . . ." (quoting *McNair*, 379 S.C. at 467, 665 S.E.2d at 832)). Given the unique circumstances of this case, we find the ALC did not err in sanctioning the Department for its discovery violation.

However, we find the ALC did err in sanctioning the Department by reducing Beltram's tax liability. *See S.C. Dep't of Consumer Affairs v. Foreclosure Specialists, Inc.*, 390 S.C. 182, 186, 700 S.E.2d 468, 470 (Ct. App. 2010) (providing the ALC does not have "authority to exceed their statutorily granted powers"); *see also* Randolf R. Lowell, *South Carolina Administrative Practice and Procedure*, 152 (2d ed. 2008) ("The ALC has no authority to decide civil matters or to award monetary damages in cases."). Instead, the ALC should have sanctioned the Department separately from Beltram's tax liability especially given the fact that he had no liability as of the date of the amended final order. *See supra* section III.B. Accordingly, we affirm as modified the ALC's order imposing a $675 sanction on the Department for its discovery violation but find this award may not act as a reduction or set-off of any tax liability. *See* Rule 37, SCRCP.

## IV. BELTRAM'S APPEAL

### A. Beltram's Liability and the Withholding Tax Quarters

Beltram argues the ALC erred in holding his liability was based upon the withholding tax quarters instead of the filing dates of the tax liens. Because this issue assigns error to the ALC's calculation of the amount due in its order on remand, it is now moot in light of this court's holding that the Department is barred from collecting anything.

### B. Due Process

Beltram argues the ALC violated his due process rights by (1) awarding the Department the amount of interest that accrued during a period of significant delay

caused by the Department and (2) failing to dismiss the case because the Department did not provide timely notice of the tax liens to him. We disagree.

### 1. Preservation

The Department argues Beltram failed to preserve or abandoned several different sub-issues contained within his due process argument. We disagree and find these sub-issues are preserved for appellate review.

We find Beltram did not abandon his claims that (1) holding him liable for interest that accrued during the Department's delay in bringing this case violated his due process rights and (2) he was not liable for Intedge's tax liabilities because they became the tax liabilities of Intedge Manufacturing when he sold Intedge to his uncle in July 2005. *See Fields v. Melrose Ltd. P'ship*, 312 S.C. 102, 106, 439 S.E.2d 283, 285 (Ct. App. 1993) ("An issue raised on appeal but not argued in the brief is deemed abandoned and will not be considered by the appellate court."); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (providing an appellant abandons an issue by "fail[ing] to provide arguments or supporting authority for his assertion").

We also find Beltram preserved his argument that the ALC should have waived any interest he owed as a remedy for the Department's delay and discovery violations. *See Pye v. Estate of Fox*, 369 S.C. 555, 564, 633 S.E.2d 505, 510 (2006) ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved."). While we agree Beltram never specifically asked the ALC to waive the interest Intedge owed as a remedy for the Department's delay and discovery violations at the hearing, Beltram did ask the court to dismiss the Department's case against him as a result of the Department's actions, and the entire purpose of Beltram's case was to ask the ALC to find that he was not liable for Intedge's tax liabilities, including the interest it owed, for a variety of reasons. Additionally, although the ALC did not specifically discuss interest in its final order, it in effect ruled Beltram was liable for the interest owed by Intedge by including it in the amount Beltram owed to the Department. Beltram then filed a motion to reconsider, asking the ALC to change its ruling and find he was not liable for the interest accruing after the sale of Intedge to his uncle. In his argument as to this issue, Beltram asserted the evidence showed the Department "had several opportunities to contact [him]" about the taxes "but, for whatever reason, chose not to do so." The ALC responded to this request in its final amended order, stating Beltram was responsible for the interest because it could find no law to support waiving the interest. Thus, this sub-issue was raised to and ruled upon by the ALC,

and it is preserved for appellate review.  Accordingly, we find all of these sub-issues are preserved for appellate review.

## 2.  Merits

We find the ALC did not violate Beltram's due process rights by awarding the Department interest on Intedge's tax liabilities or by not dismissing the Department's case against Beltram for failure to provide timely notice to Beltram.  *See Original Blue Ribbon Taxi Corp.*, 380 S.C. at 604, 670 S.E.2d at 676 (providing an appellate court should only reverse the ALC's order if it is unsupported by substantial evidence in the record or contains an error of law).

First, the ALC did not err in finding Beltram was given timely notice of the taxes. Neither party argues the notices given to Intedge were untimely under section 12-54-85.  Accordingly, the law of the case is that the notices to Intedge were timely. *See Lewis*, 398 S.C. at 329, 730 S.E.2d at 285 ("[A]n unappealed ruling, right or wrong, is the law of the case.").  Next, we find the notices of assessment to Intedge constituted constructive notice to Beltram of Intedge's tax liabilities that he as a withholding agent was responsible for.  *See Ball v. Indiana Dep't of Revenue*, 563 N.E.2d 522, 524 (Ind. 1990) (providing when the Indiana Department of Revenue complies with a statute—similar to our section 12-54-85—"and provides the corporation with notice of assessment, personal notice to the responsible officer then in charge is not required.  Such notice to the corporation satisfies the due process requirement of notice and opportunity to be heard in that it is reasonably calculated to afford the responsible officer actual notice of the corporation's potential liability and his own potential liability").  Additionally, Beltram met with revenue officers from the Department in 2002 to discuss Intedge's outstanding tax liabilities, so he had notice of Intedge's tax liabilities from before 2002.  Moreover, all but one of the proposed notices of assessment (all but the proposed notice for the withholding quarter ending in June 2005) and all but three of the final assessments were sent to Intedge (all but for the final assessment for the withholding quarters ending in December 2004, March 2005, and June 2005) before Beltram sold Intedge in July 2005.  Accordingly, we find the ALC properly found the Department timely provided notice to Beltram of Intedge's outstanding tax liabilities and his corresponding potential liability for those tax liabilities.

We also conclude the Department's delay in bringing its case against Beltram did not violate his due process rights.  Due process requires: "(1) adequate notice; (2) adequate opportunity for a hearing; (3) the right to introduce evidence; and (4) the right to confront and cross-examine witnesses." *Moore v. Moore*, 376 S.C. 467, 473,

657 S.E.2d 743, 746 (2008) (quoting *Clear Channel Outdoor v. City of Myrtle Beach*, 372 S.C. 230, 235, 642 S.E.2d 565, 567 (2007)). As discussed above, Beltram received adequate notice of Intedge's tax liabilities. Next, Beltram also received the remaining components of due process as he requested a contested case hearing from the ALC and received a hearing during which he admitted evidence, put up witnesses, and cross-examined the Department's witnesses. Moreover, Beltram could have requested a contested case hearing nine months after his protest, if he did not wish to wait for the Department's May 1, 2013 determination. *See* § 12-60-450(E)(3).[7] Accordingly, we find the ALC did not violate Beltram's due process rights in its final amended order, and we affirm as to this issue.

## V.    CONCLUSION

We affirm as modified the ALC's findings (1) to conclude all of the tax liens filed by the Department against Intedge have expired and (2) to impose a $675 sanction on the Department for its discovery violation, which is not a reduction of any tax liability. We affirm the ALC's holding that Beltram's due process rights were not violated.

**AFFIRMED IN PART AND AFFIRMED AS MODIFIED IN PART.**

**WILLIAMS, GEATHERS, and HILL, JJ., concur.**

---

[7] We cite to the law as it stood at the time of Beltram's contested case hearing, which provided if the Department fails to issue a department determination for a case within nine months "after the date the written protest or claim was filed with the Department by the taxpayer," then "the taxpayer may request a contested case hearing before the [ALC] . . . ." § 12-60-450(E)(3). Since that time, the law has changed to give the Department a year to issue its department determination and to require the Department to notify the taxpayer of his right to request a contested case hearing if the Department does not file a determination within that year. *See* S.C. Code Ann. § 12-60-450 (Supp. 2018).